DECISION
This matter is before the Court on plaintiff Cheryl Dowdell's complaint for relief from the defendant Peter Bloomquist's planting of four 40' trees, Western Arborvitae trees, on his side of the line separating their properties.
The contentious history begins in November 2000 when Bloomquist sought a variance to construct an addition to his home. For six months the parties argued before the Charlestown Zoning Board of Review as to the merits of the addition. In March 2001, Bloomquist began clearing land and digging holes for the ultimate planting of the aforesaid trees and on April 16 sent a notice of trespass letter to Dowdell. Then on May 16, 2001, the day after the Zoning Board closed its hearing on the variance request, the first of the Western Arborvitae trees was planted, basically in the center of Dowdell's view from her second floor living area and third floor master bedroom. Shortly thereafter, three more of the 40' trees arrived, all placed in a row touching each other next to the property line. Sometime later, Dowdell began the process of filing her complaint, and when it appeared that more trees were coming, sought a Temporary Restraining Order ("TRO") prohibiting any further planting. After granting the TRO on April 12, 2002, the Court set the matter down for hearing on a request for preliminary injunction, and then as the hearing progressed, consolidated it with the trial on the merits in accordance with Rule 65 of the Rules of Civil Procedure. Between the hearings, Dowdell was granted an amendment to her complaint to add the allegation of a violation of deed restrictions.
As the Court presided over four days of testimony, heard arguments of counsel and viewed the property, it was saddened to observe the fact that people, especially neighbors, have such difficulty getting along. This Court, throughout the process, urged settlement and suggested mediation, but to no avail. Its decision, while likely to satisfy the prevailing party, will unfortunately not end the dispute between these former neighbors. It is rendered with the hope and admonition that they set aside their animosities and hatreds and recognize that their occupancies on these sites are for but a millisecond in the sands of time.
Dowdell in her complaint argues that the four trees create a fence that was put up in spite, and thus under § 34-10-20 of the General Laws entitles her to relief either legal or equitable. She further argues that the deed restrictions to both parties, prohibit fences or hedges that exceed 6' in height, and because these trees are 40' tall, she is entitled to relief. Bloomquist contends that the trees were planted, not out of spite, but rather to give him privacy from Dowdell. He believes Dowdell has not been damaged; comes to the Court with unclean hands because of her own plantings and has no right to an unobstructed view of the Atlantic Ocean.
With regard to the deed restrictions as to height of trees, Dowdell presented nothing to prove that they were presently being enforced. There is no evidence that any property owner, neighborhood organization or town authority has done anything with regard to this restriction since it was originally adopted and made part of the subdivision deeds or that it is presently being abided by, Certainly, the mere placing of the restrictions into evidence without more, is insufficient for plaintiff to meet her burden of proof so that relief could be granted. Conversely, however, without this proof there is nothing to say that she comes to this Court with unclean hands because of her own plantings.
For Dowdell to prevail under § 34-10-20 of the General Law, she must show that these trees were, in fact, a fence erected in spite, with no benefit to Bloomquist. The statute reads:
 34-10-20 Spite fences. — A fence or other structure in the nature of a fence which unnecessarily exceeds six feet (6') in height and is maliciously erected or maintained for the purpose of annoying the owners or occupants of adjoining property, shall be deemed a private nuisance, and any owner or occupant who is injured, either in the comfort or enjoyment of his or her estate thereby, may have an action to recover damages for the injury.
The testimony from Dowdell and her husband, William, indicated that until the filing of the variance application by Bloomquist, they, and Bloomquist's mother, who owned the property until 1999 or 2000 had an amicable relationship allowing them to cut existing oak and pine tress so that their view of the ocean was not obstructed. In fact, they had conditionally concurred in Mrs. Bloomquist's earlier variance request which was never acted on. When, however, Dowdell objected to the new variance request filed by Bloomquist, attitudes changed. Bloomquist at one of the zoning hearings made comments about Dowdell's "boyfriend." When the first tree arrived, Bloomquist yelled to William Dowdell "You could have been sitting on my deck having a beer while I topped my trees if she [plaintiff] let you make your own decisions"; that you [Dowdell] "are going to have to kill me to get ride of me and no one was going to tell me what to do with my property." Three more trees then arrived. Photographs introduced by Dowdell depicted four huge trees blocking her second and third floor windows and much of her view of the Atlantic. Bloomquist's tree mover and planter testified for Dowdell that up to four more trees were expected in the early spring of this year. Dowdell's real estate expert, George Daglieri, stated that the trees, so located, depreciated the value of her property by as much as $100,000. He based this opinion on recent sales of real estate with and without obstructed views of the ocean. Horticulturist, Brian Maynard, testified for Dowdell that the trees were Western Arborvitae, capable of growing to 50 to 70'; they were 15' (capable of growing to 25') in width at the base and narrower as they went up. He noted that the row of Eastern Arborvitae on Dowdell's side of the line were 5' wide and could grow to 20 to 30' and were slow growing. He said both were used as hedges and screens and he recommended both, recommending Eastern Arborvitae for smaller landscapes with Western Arborvitae needing more real estate. He testified that Bloomquist's trees were not properly placed as a windbreak. He said that topping of these trees was a temporary remedy since they would eventually begin growing up again.
Bloomquist offered testimony from Realtor, Michael Lenihan, who contended that any impact caused by the trees on Dowdell's view was neutralized by the "hot" South County real estate market. Further, he said these trees create a very private backyard preventing it from being a fish bowl. Matthew Largess, an arborist, added that Western Arborvitae trees were enormous plants used as plantings in yards and not really used as a hedge, although they could be because they are good blockers. He pointed out that the closer they are planted together, the taller they will grow. Further, he testified that a hedge can be any type of plant material. Finally, Bloomquist testified that he had no privacy in his backyard because of Dowdell and her elevated location so he took out some small oaks and planted the four trees, giving him year-round privacy in his backyard, which will be especially important when he adds his addition to the house.
With all this testimony and the exhibits introduced, the Court looks to the law in question. Both sides agree there is little case law interpreting § 34-10-20. From Musumeci v. Leonardo, 77 R.I. 255
(1950) and Piccirelli v. Groccia, 114 R.I. 36 (1974), we know that (1) there is no common law right to light and air, (2) that equity is always available to abate a private nuisance even if another remedy is referred to in the statute; and (3) that even if done in spite, if there is any benefit to the party erecting the fence, no relief can be granted. Breaking down § 34-10-20, the Court asks:
(A) Is it a fence?
§ 34-10-1 defines fence to include a hedge (Subsection 1 and 2).
Black's Law Dictionary defines a fence as a "hedge, structure or partition erected for the purpose of inclosing a piece of land or to separate two contiguous estates and a hedge is defined in Webster's Dictionary as a row of closely planted shrubs or low growing trees forming a boundary or fence.
In this case, both experts, Maynard and Largess, concluded that although less common, Western Arborvitae can be used as hedges and that the four Western Arborvitae, as planted, have widths of 15' each, touch each other and grow low to the ground. The Court, therefore, finds that the fence as referred to in § 34-10-20 can include a hedge and that the four trees as situated touching each other for a distance of some 60' constitute a hedge and a fence within the meaning of the statute.
(B) Was the fence erected from spite or malice?
Until November 2000 the parties had what appears to be a friendly relationship. With Dowdell's objection before the Zoning Board, that changed. Bloomquist's incendiary statements to the Dowdell's; his notice of trespass letter; the timing of the clearing, size and placement of the four trees leads this Court to fully believe and find that the only reason for the planting of these trees and especially their location was in spite to get even with Dowdell for her strenuous objection to his plans.[1]
(C) Was there any benefit to Bloomquist by the erection of the fence?
The only reason offered by Bloomquist and his realtor for the fence was to give him total privacy from Dowdell. Even though there already existed an Eastern Arborvitae screen on Dowdell's side of the line, Bloomquist apparently wanted more. This, in a moderately developed subdivision of one acre lots. While privacy could always be given as a benefit, more is needed. Otherwise it would give any erector of a spite fence a built-in justification for his conduct. Accepting privacy alone would simply result in the statute being rendered meaningless and absurd, not something any court wishes to attribute to a product of the people's representatives. The Court therefore finds that the benefit claimed by Bloomquist is no more than a subterfuge for his clear intent to spite his neighbors by the erecting a fence of totally out of proportion trees.
Having found that the trees constitute a spite fence in violation of § 34-10-20, the Court must now determine an appropriate remedy. While it heard testimony as to the depreciation of Dowdell's real estate value, it is convinced that money cannot compensate them for this spiteful act. Equitable relief is far more appropriate. Bloomquist is therefore ordered to cut the four Western Arborvitae to no more than 6' in height and keep them at that level or remove them entirely with no more Western Arborvitae to be planted.[2]
A judgment consistent with this Decision should enter.
[1] Bloomquist is correct that Dowdell does not have a right to view the ocean forever. But she does have a right not to have a fence placed in front of her prime living areas because she objected before the Zoning Board.
[2] Since no evidence was submitted as to the establishment of the 6' height deed restriction, the Court will not order Dowdell to cut their trees back, but recommends they do so.